Gary C. Gosha
Kit M. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
gcgosha@gmail.com
503-522-6571
 *Plaintiffs, Pro Se*

FILED 15 JAN '16 14:18 USDC-ORP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

GARY C. GOSHA, an individual, and
KIT M. GOSHA, an individual, and together as
husband and wife,

    Plaintiffs,

    v.

THE BANK OF NEW YORK MELLON
CORPORATION fka THE BANK OF NEW
YORK, AS TRUSTEE (CWALT 2005-72),
Delaware Corporation; BANK OF AMERICA
N.A., a Delaware Corporation; BAYVIEW
LOAN SERVICING LLC, a Florida
Corporation; CLEAR RECON CORP, a
California Corporation,

    Defendants.

Civil No. 3'16 CV-0073 BR

**COMPLAINT**

1. Injunctive Relief
2. Declaratory Relief
3. Violation 15 U.S.C. § 1601 et seq.
   ("Consumer Credit Protection Act")
4. Violation ORS Chapter 646 (Oregon
   Unfair Trade Practices Act)
5. Common Law Fraud
6. Violation ORS 166.715 to 166.735
   ("Racketeering")
7. Promissory Estoppel

**JURY TRIAL REQUESTED**

  Gary C. Gosha and Kit M. Gosha (hereinafter the "Plaintiffs"), come now before this

United States District Court and respectfully allege the following:

PAGE 1  **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571



## I.  NATURE OF THE ACTION

1.      Plaintiffs' bring this action in response to the non-judicial foreclosure of their Trust Deed commenced by Defendant Clear Recon Corp ("CRC") on September 11, 2015. *See Exhibit A – Notice of Sale.*

2.      Plaintiffs' have substantial legal rights in their property and the Defendants have threatened those rights.  To insure their rights are protected, the Plaintiffs have brought several substantive claims against the Defendants and request judicial supervision, and time, to fully adjudicate them.

3.      Plaintiffs' home is scheduled to be sold on January 26, 2016 and they will suffer irreparable harm if the sale is not halted.  Because the sale is imminent, Plaintiffs have requested injunctive relief in this Complaint and have concurrently filed a separate Motion for a Temporary Restraining Order and Status Quo Preliminary Injunction.

**A. Plaintiffs Case**

4.      Plaintiffs' case can be summarized in two parts.  First, the Plaintiffs' Trust Deed is "void" because the lender (creditor) named in it did not exist when the document was created in 2005.

5.      Second, the Defendants covered-up the "void" Trust Deed by (a) making false and misleading statements, and failing to properly disclose material facts, as required under the Truth in Lending Act ("TILA"), before the loan was closed in 2005, and (b) they continued their deception by forging and publically filing various documents to conceal the fatally flawed loan and TILA violations so they could foreclose and sell the Plaintiffs home in 2015.

PAGE 2      **COMPLAINT**

## B. Part One – Trust Deed is Void

6.      Plaintiffs Trust Deed was on October 24, 2005. The lender (creditor) named in the document did not exist when the document was originated. Complaint ¶ 33 to 38. The Trust Deed is fatally flawed and void as a matter of well settled Oregon law, and the law of the Ninth Circuit. Because the Trust Deed is void, all transactions related to it are also void, including the Defendants foreclosure of it under ORS 86.705 to ORS 86.795.

7.      Concurrent with their creation of the "void" Trust Deed, the Defendants, or some of them, engaged in fraudulent, misleading, and deceptive practices to conceal the true identity of the Plaintiffs' lender (creditor), along with other material information relating to the Plaintiffs' Loan, in violation of TILA disclosure requirements prior to closing. Complaint ¶ 107 to 120. These violations were not revealed to the Plaintiffs until the Defendants began to investigate the Defendants claims and documents related to their September 2015 foreclosure filing.

8.      Plaintiffs' claims for declaratory relief are related, in part, to their "void" Trust Deed and TILA disclosure and loan rescission issues.

## C. Plaintiffs Case Part Two - Cover-Up

9.      To "*avoid*" the "*void*" issues with the Plaintiffs' Trust Deed, and the TILA disclosure violations, the Defendants, or some of them, crafted a scheme to cover up the fatal defects so they could foreclose and seize the Plaintiffs property.

10.      In March 2015, Defendant Bayview Loan Servicing LLC ("BAYVIEW") omitted material facts, and made false and misleading statements to the Plaintiffs, and to the Oregon Department of Justice's Oregon Foreclosure Avoidance Program ("OFAP"), relating to the beneficiary of the Plaintiffs' Trust Deed and their authority to appear and negotiate in its name.

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

Complaint ¶ 83 to 98.

11.     In May 2015, Defendant BAYVIEW continued the cover-up by forging and publically filing an Assignment of the Plaintiffs' Trust Deed with the Washington County Oregon Recorders office. In that document, the Defendants falsely named an "assignor" who did not possess the rights it purportedly assigned to the "assignee", Defendant Bank of New York Mellon ("BONYM"). Complaint ¶ 99.

12.     In September 2015, Defendant BAYVIEW, acting as an agent for Defendant BONYM, then forged, and publically filed, an "Appointment of Successor Trustee" naming Defendant BONYM as the Plaintiffs' Trust Deed beneficiary, and used that falsified authority to substitute Defendant CRC as its new successor trustee. Complaint ¶ 102.

13.     Once that task was completed, Defendant CRC began non-judicial foreclosure proceedings against the Plaintiffs property by forging and publically filing a Notice of Default and Election to Sell. Complaint ¶ 103 to 104. *See ORS 165 - Forgery and Related Offenses.*

14.     Since each of the forged documents just mentioned were records created and kept in the normal course of their business activity, the Defendants violated *ORS 165.075 to 165.080* relating to the falsification of their business records.

15.     The cover-up allegations speak, in part, to the Plaintiffs' remaining claims including violations of 15 U.S.C. § 1601 et seq. ("Consumer Credit Protection Act"), ORS Chapter 646 ("Oregon Unfair Trade Practices Act"), Common Law Fraud, and ORS 166.715 to 166.735 ("Racketeering"). The Promissory Estoppel claim speaks to BANA's behavior as they lured the Plaintiffs into default, kept them in default until they could not recover, then foreclosed on their home. Complaint ¶ 56 to 71.

PAGE 4    **COMPLAINT**

## II.    JURISDICTION

16.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 et seq., which confers

original jurisdiction upon this Court in a civil action arising under Federal Law.  Plaintiffs' raise

Federal claims under Title 15 relating to consumer rights and protections, which must be decided

in order that they might prevail on their claims.

17.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 et seq., because the

action involves a controversy between citizens of different states, and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

18.      This Court has jurisdiction over the state law claims in this action pursuant to 28

U.S.C. § 1367 et seq., and has the authority to grant declaratory relief pursuant to the Declaratory

Judgment Act, 28 U.S.C § 2201 et seq.

## III.    VENUE

19.      Venue is proper, pursuant to 28 U.S.C. § 1391(b), because the real property that is

the subject of this action is located in this District. Venue is also proper pursuant to 28 U.S.C. §

1391(c) because the Defendants, or some of them, conduct substantial business in this District,

have sufficient minimum contacts within this District, and otherwise purposely avail themselves

of the markets in this District through the promotion, sale, and marketing of their products and

services in this District.

## IV.    PARTIES

20.      Plaintiffs are **GARY C. GOSHA and KIT M. GOSHA** ("Plaintiffs").  Plaintiffs

are citizens of the State of Oregon, and residents of Washington County Oregon, which is in this

District.  Plaintiffs are the owners of the real property that is the subject of this lawsuit and, at all

PAGE 5      **COMPLAINT**

times, are relevant to this Complaint, as they reside in this District. The property is located in this District at 17590 SW Cheyenne Way, Tualatin, Washington County, Oregon 97062 ("Property").

21.     Defendant **THE BANK OF NEW YORK MELLON ("BONYM")** claims to be the "beneficiary" of the Plaintiffs Loan as Trustee for the CWALT 2005-72 REMIC Trust. *See Exhibit A.* BONYM is, therefore, relevant to this Complaint because it claims to be a beneficiary, claims a default, and has instructed one, or more, of the other Defendants, to foreclose the Plaintiffs' Trust Deed in its name. BONYM may also be acting as an agent for other parties not yet known to the Plaintiffs.

22.     BONYM is a global banking and investment company headquartered at 225 Liberty Street, New York, New York 10286. BONYM is a citizen of New York State for purposes of diversity.

23.     Defendant **BANK OF AMERICA, N.A. ("BANA")** has been identified as the Master Servicer for the CWALT 2005-72 Trust. *See Exhibit L.* BANA was also the servicer of the Plaintiffs' Mortgage at some time. BANA is a national banking company whose corporate address is 100 North Tryon Street, Charlotte, NC 28255. As the Master Servicer of the Trust claiming ownership and beneficial interests in Plaintiffs' loan, BANA is, at all times relevant to this Complaint because it is acting as an agent for Bank of New York Mellon ("BONYM") as Trustee for the CWALT 2005-72 and/or other parties not yet known to the Plaintiffs. BANA is a citizen of North Carolina for purposes of diversity. Defendant BANA is, or was, subject to specific federal laws and administrative regulations governing mortgage loan servicing activities. These laws and regulations include, but are not limited to, the Consumer Credit Protection Act

PAGE 6     **COMPLAINT**

15 U.S.C. § 1601 et seq., Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C § 1692 et

seq., the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 et seq., 12 CFR

part 1024 (Regulation X), 12 CFR Part 1026 (Regulation Z), and other Federal Consumer

Protection Statutes.

    24.    Defendant **BAYVIEW LOAN SERVICING LLC ("BAYVIEW")** claims to be

the servicer of the Plaintiffs' real estate loan and is acting as an agent for BONYM. *See Exhibit

1 – Page OFAP_3.* BANA is also acting as an agent for BANA as BANA hired them as a sub-

servicer for loans in the CWALT 2005-72 Trust. BAYVIEW is relevant to this Complaint

because it claims to be the servicer of the Plaintiffs' loan. BAYVIEW is also relevant because it

is acting as an agent of BONYM and is directing the foreclosure of the Plaintiffs' Trust Deed.

BAYVIEW appointed a new trustee under the Plaintiffs' Trust Deed and then instructed this new

trustee to foreclose it.

    25.    BAYVIEW's corporate address is 4425 Ponce de Leon Boulevard 5th Floor,

Coral Gables, FL 33146. BAYVIEW is a citizen of Florida for purposes of diversity.

BAYVIEW is also engaged in the business of servicing real estate loans secured by real property

throughout the United States and in the State of Oregon. Defendant BAYVIEW is, or was,

subject to specific federal laws and administrative regulations governing mortgage loan servicing

activities. These laws and regulations include, but are not limited to, the Consumer Credit

Protection Act 15 U.S.C. § 1601 et seq., Fair Debt Collections Practices Act ("FDCPA") 15

U.S.C § 1692 et seq., the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 et

seq., 12 CFR part 1024 (Regulation X), 12 CFR Part 1026 (Regulation Z), and other Federal

Consumer Protection Statutes.

PAGE 7    **COMPLAINT**

26. Defendant **CLEAR RECON CORP ("CRC")** is a subsidiary of the law firm Aldridge Pite LLP. Defendant CRC claims to be an agent acting for BAYVIEW and BONYM the purposes of foreclosing the Plaintiffs Trust Deed. *See Exhibit A.* Defendant CRC filed a "Notice of Default and Election to Sell" the Plaintiffs' property on September 11, 2015. CRC is, at all times relevant to this Complaint, as it is acting as the foreclosing agent for BONYM and BAYVIEW and/or other parties not yet known to the Plaintiffs.

27. CRC is a California company located at 4375 Jutland Drive San Diego, CA 92117. CRC is a citizen of California for purposes of diversity.

## V. FACTS COMMON TO ALL CLAIMS

28. Plaintiffs re-allege each allegation as set forth above and incorporate each by reference as if each were set forth herein.

### A. Loan Origination

29. Plaintiffs refinanced their home in 2005. The lender named in Plaintiffs' loan documents is America's Wholesale Lender, a New York Corporation. The prior lender and the new lender are different parties.

30. Plaintiffs signed a Trust Deed on October 24, 2005 along with various riders to it, hereinafter referred to as the "Trust Deed".

31. Plaintiffs signed a negative amortization variable rate Note on October 24, 2005 in the amount of $320,000, along with various riders to it, hereinafter referred to as the "Note".

32. Plaintiffs hereinafter refer to the October 24, 2005 Note and Trust Deed as the "Loan".

PAGE 8    **COMPLAINT**

**B. Trust Deed**

33.     Defendant BAYVIEW produced a "true and correct" copy of the Plaintiffs' Trust

Deed on March 27, 2015. *See Exhibit B - Trust Deed.*  BAYVIEW provided the Trust Deed as

part of their statutory requirement to do so when they participated in the Oregon Foreclosure

Avoidance Program ("OFAP") with the Plaintiffs from March 17, 2015 through June 8, 2015.

34.     The Lender named in the Plaintiffs' Trust Deed is "AMERICA'S WHOLESALE

LENDER. Lender is a CORPORATION organized and existing under the laws of NEW

YORK", and is hereinafter referred to as ("AWLNYC").

35.     AWLNYC did not exist when the Plaintiffs signed their Trust Deed on October

24, 2005. *See Exhibit C - NY Name Search.*  Defendants BONYM, BANA, BAYVIEW, and

CRC have, at all times, concealed this material fact from the Plaintiffs.

36.     Plaintiffs' Trust Deed is also known as a MERS Originated Mortgage ("MOM").

MERS ("Mortgage Electronic Registration Systems") is named as Grantee and Beneficiary in the

Plaintiffs' Trust Deed as nominee for the non-existent AWLNYC.

37.     AWLNYC is not a MERS member.

38.     AWLNYC has never been registered to do business in the State of Oregon nor has

it ever been licensed to originate mortgages in the State, either before, or after, the Plaintiffs'

Trust Deed was created. *See Exhibit D – Mortgage Lending License Inquiry.*

**C. Note**

39.     Defendant BAYVIEW produced a "true and correct" copy of the Plaintiffs' Note

on March 27, 2015. *See Exhibit E – Note.*  BAYVIEW provided the Note as part of their

PAGE 9     **COMPLAINT**                                          Gary C. Gosha
                                                                 17590 SW Cheyenne Way
                                                                 Tualatin, OR 97062
                                                                 503-522-6571

statutory requirement to do so when they participated in the Oregon Foreclosure Avoidance

Program with the Plaintiffs from March 17, 2015 through June 8, 2015.

40.       The Lender named in the Note is *"AMERICA'S WHOLESALE LENDER"*

("AWL").

41.       Plaintiffs believe that AWL (lender named in the Note) and AWLNYC (lender

named in the Trust Deed) are the same non-existent entity.

42.       AWL is not a MERS Member.

43.       AWL did not have a license to originate mortgages in Oregon when the Plaintiffs'

Loan was originated. *See Exhibit D – Mortgage Lending License Inquiry.*

44.       The Note is not endorsed.

**D. Loan Securitization**

45.       The Defendants, all of them, claim the Plaintiffs' Loan was securitized in the

CWALT 2005-72 REMIC Trust Fund (the "Trust").

46.       The Defendants, all of them, claim that BONYM is the Trustee for the Trust.

BONYM identified Defendant Bank of America N.A. as the Master Servicer of the Trust. *See*

*Exhibit L – BONYM Inquiry.*

47.       The Trust is expressed in the documents that created it including, but not limited

to, a Pooling and Servicing Agreement ("PSA") dated on, or about, November 1, 2005. *See*

*Exhibit F – PSA Excerpt.*

48.       The Trust was formed under, and is governed by, the laws of New York State.

49.       The PSA is *"the primary legal document"* that lays out the rights, obligations, and

authority, of all parties interacting with the Trust, and with each loan in it, including, as the

PAGE 10    **COMPLAINT**                                    Gary C. Gosha
                                                            17590 SW Cheyenne Way
                                                            Tualatin, OR 97062
                                                            503-522-6571

Defendants allege, the Plaintiffs Loan.

50.     A full copy of the PSA is available online at the U.S Securities and Exchange Commission's website at:

http://www.sec.gov/Archives/edgar/data/1345834/000090514806000683/efc6-

0311_5795478ex991.txt .   The Plaintiffs incorporate the PSA by reference as if it was fully set forth herein.

**E.     Servicing and Loan Payments**

51.     On, or about December 1, 2005, Countrywide Home Loans, Inc. ("CWHLI") identified themselves to the Plaintiffs as the servicer of their Loan. CWHLI has never identified themselves to the Plaintiffs as the Plaintiffs' creditor, noteholder, note owner, or the beneficiary of their Trust Deed.

52.     BANA assumed the servicing of the Plaintiffs' Loan some time later. BANA has never identified themselves to the Plaintiffs as the Plaintiffs' creditor, noteholder, note owner, or the beneficiary of their Trust Deed.

53.     BANA transferred the servicing of the Plaintiffs' Loan to BAYVIEW in 2013. BAYVIEW has never identified themselves to the Plaintiffs as the Plaintiffs' creditor, noteholder, note owner, or the beneficiary of their Trust Deed.

54.     The Plaintiffs began making regular Loan payments to their servicer each month from December 1, 2005 through August 26, 2011. The PITI (*Principal Interest Taxes & Insurance*) payments started out at $1,496.29 ($1,104.38 plus escrow of $391.91) and increased to $2,589.40 within a few years.

55.     Plaintiffs made each monthly payment even as the amount increased by more than

PAGE 11     **COMPLAINT**

$1,000 per month. Plaintiffs made 83 consecutive payments totaling approximately $140,932 from December 1, 2005 through August 2011.

## F. Plaintiffs Ask BANA For Help and Were Denied

56.     Plaintiffs became increasingly concerned with the rising monthly payments and wanted to refinance or modify their Loan to a fixed amount with a reasonable monthly payment.

57.     Plaintiffs asked their Loan servicer BANA for help to refinance or modify the terms of their Loan many times when they were current on their Loan.

58.     BANA's response to Plaintiffs' requests for help were..."*that as long as the Loan is current, we cannot help you*".... BANA's statements that *"they could not help because Plaintiffs' Loan was current"*, were false and misleading, and BANA omitted the material fact that help was available for the Plaintiffs, when they were current on their Loan but in imminent danger of default. Help was available because BANA had signed a Servicer Participation Agreement with the U.S Treasury in 2009 and updated it in 2010. Under that agreement, BANA committed to provide loss mitigation relief for homeowners that were current, but in imminent danger of default. BANA also had internal loss mitigation programs available. BANA withheld information on these loss mitigation programs from the Plaintiffs when they asked for help.

59.     Increasingly concerned that BANA's customer service was not able to help them, the Plaintiffs went to their local BANA branch in Sherwood Oregon and spoke, in person, with the Branch Manager. Plaintiffs were told again that, as long as their Loan was current, BANA could not help. BANA's Branch Manager's statement that *"they could not help because Plaintiffs' Loan was current"*, was false, misleading, and omitted material facts because BANA had loss mitigation options available both internally and through their agreement with the U.S.

PAGE 12     **COMPLAINT**

Treasury.

60.     When the Plaintiffs asked the BANA Branch Manager what their other customers with hardships were doing, they were told that "*many of their customers just stopped paying so they could get help*".

61.     BANA's statements that "*as long as their Loan was current they could not help*" were part of a policy and practice by BANA to lure borrowers into default, keep them there to a point they could not recover, then foreclose and take their home.  The aforementioned policy and practice was driven, in part, by BANA's contractual obligations under the PSA which incentivized payments to the BANA if they would foreclose, rather than modify the Plaintiffs' Loan.  PSA Pages 53-56.

## G.  BANA Denied Help Because "Foreclosure" cost them less than "Help"

62.     The PSA for the Trust requires the Master Servicer (BANA) to repurchase the Plaintiffs' mortgage Loan for its full face value, using its own money, in order to modify it.  Plaintiffs were unaware of this fact, at all times, when they were asking BANA for help.  PSA Page 56(b).

63.     At all times, when the Plaintiffs were asking BANA for help, the PSA would have required BANA to repurchase the Plaintiffs' Loan at a cost between $320,000 and $349,500, using their own money, after it had been modified.  With property values falling, BANA would have needed to lay out the full repurchase price of the Plaintiffs' Loan, then underwrite a new loan, or modify the existing one, where the unpaid principal balance would have been up to 50% higher that the collateral value.

64.     Because the PSA required BANA to repurchase a modified loan, it was

PAGE 13     **COMPLAINT**

financially more advantageous for BANA to lure the Plaintiffs into default, keep them in default until they could not recover, then foreclose and take their home. This strategy would cost substantially less that repurchasing the Plaintiffs' Loan for its full face value, and too, permits them to collect fees and costs related to defaulted loans. The longer a loan is in default, the more fees and costs BANA can collect. All these fees and costs are fully reimbursable upon the liquidation of the defaulted property. PSA Pages 53-56.

65. By engineering a plan to lure the Plaintiffs into default, keep them there until they could not recover, and then foreclose on their home, BANA would not risk any of its own capital ($320,000 to $445,000), and would get fully reimbursed for all their liquidation expenses. The net financial gain to BANA by foreclosing the Plaintiffs' Loan, rather than modifying it, was several hundred thousand dollars.

66. Applying this same cost/benefit illustration to thousands of loans, in hundreds of trusts, would yield overall cash savings to BANA in the hundreds of millions, perhaps billions, of dollars if they denied help and foreclosed on troubled loans. As stated in the PSA, the servicer (BANA) gets paid for all their liquidation costs, advances, and expenses before the Trust's Certificateholders.

67. By November 2011, the Defendants alleged the Plaintiffs default, including accumulated fees and costs, was approximately $8,000. When the Plaintiffs first asked BANA for help, there was no default.

## H. BANA Induced Plaintiffs to Stop Paying

68. BANA induced the Plaintiffs to stop making loan payments by (a) refusing to offer available loss mitigation programs while they were current on their Loan, and (b) by telling

PAGE 14    **COMPLAINT**

the Plaintiffs that they could only offer help once their Loan was in default.  Plaintiffs stopped making payments in September 2011 so they could get help.

69.     On October 17, 2011, BANA responded by sending the Plaintiffs a Notice of Intent to Accelerate and Foreclose.

70.     Only after BANA had lured the Plaintiffs into default, and threatened them with foreclosure, did they offer to help.  On October 24, 2011, BANA sent the Plaintiffs a letter soliciting them to apply for a loan modification.

71.     BANA's October 24, 2011 letter was false and misleading, and omitted material facts that BANA had no intention of modifying the Plaintiffs' Loan, because modifying it would cost them more than foreclosing.

## I.  Chapter 7 Bankruptcy

72.     Plaintiffs consulted an attorney about BANA's threatened foreclosure and their solicitation to apply for a loan modification.  Plaintiffs subsequently filed Chapter 7 bankruptcy in the U.S District of Oregon Bankruptcy Court as case number 11-40100 on November 28, 2011.  The bankruptcy was filed approximately one month after BANA threatened foreclosure. Plaintiffs believed that bankruptcy was the only practical option to save their home from BANA's threatened foreclosure and get a fresh start to reaffirm and renegotiate their Loan.

73.     While in bankruptcy, and on February 22, 2012, MERS executed an assignment of its beneficial interest in the Plaintiffs' Trust Deed to BONYM (CWALT 2005-72).  See *Exhibit G – MERS Assignment.*  MERS cannot not be a beneficiary of a Trust Deed and cannot not, therefore, assign an interest that it did not possess to another party.

74.     Plaintiffs' bankruptcy proceeded normally and their personal liability to pay the

PAGE 15     **COMPLAINT**

debt associated with their Loan was fully discharged on March 7, 2012.

75.     By March 7, 2012, the Defendants alleged the Plaintiffs default, including accumulated fees and costs, was approximately $20,212. When the Plaintiffs first ask BANA for help, there was no default.

76.     At all times while BANA serviced their Loan, Plaintiffs were unable to reach a loss mitigation accord with them because BANA would not fully disclose material facts and details relating to Plaintiffs' Loan, its investor, and loss mitigation programs available.

## J.     BANA Transfers Servicing to BAYVIEW

77.     On April 24, 2013, the Plaintiffs received a letter indicating that BANA was transferring their Loan's servicing to BAYVIEW.  BAYVIEW began servicing the Plaintiffs' Loan in May 2013.

78.     Between May 2013 and the date of this Complaint, the Plaintiffs discussed various loss mitigation options with BAYVIEW.  In each instance, BAYVIEW made false and misleading statements regarding the Plaintiffs alleged default and omitted key material facts about the Plaintiffs' Loan, its alleged investor/beneficiary, and loss mitigation programs available.  Because of BAYVIEW's misrepresentations and omissions, Plaintiffs have been unable to reach a loss mitigation accord with BAYVIEW.

## K. Notice of Foreclosure

79.     On January 30, 2015, BAYVIEW sent a letter to the Plaintiffs stating that *"the lender intends to foreclose"*. *See Exhibit H - Notice of Intent to Foreclose*.

80.     By January 30, 2015, the Defendants alleged the Plaintiffs default, including accumulated fees and costs, was approximately $102,428. When the Plaintiffs first ask BANA

PAGE 16     **COMPLAINT**

for help, there was no default.

81.    The January 30, 2015 letter states:

    a)   That "the Noteholder intends to initiate foreclosure action on the mortgaged property".   BAYVIEW does not state who the Noteholder is.

    b)   That the Servicer (presumably BAYVIEW) will conduct the foreclosure in the name of BONYM (CWALT 2005-72).  BAYVIEW does not state that BONYM (CWALT 2005-72) is the Noteholder.

    c)   That the "*Servicer or Noteholder has the right to foreclose because it possess copies of the necessary assignments*".  This statement is false because the 2012 MERS assignment to BONY is meaningless. *(Exhibit G).* MERS cannot not be a beneficiary of a Trust Deed and cannot not, therefore, assign an interest that it did not possess to another party;

    d)   That the "promissory Note has been made payable to the Noteholder or has been duly endorsed to the Noteholder".   BAYVIEW's statement that the Note has been made payable to the Noteholder is false because the true and correct copy of the Note BAYVIEW produced as *Exhibit E-Note* did not have any endorsements on it.

82.    BAYVIEW sent the above letter to the Plaintiffs approximately 6 weeks prior to its participation with the Plaintiffs in the Oregon Foreclosure Avoidance Program ("OFAP").

## L. Defendants Fruadulent Conduct in the Oregon Foreclosure Avoidance Program ("OFAP")

83.    On, or about March 17, 2015, BAYVIEW asked the Plaintiffs to participate with

PAGE 17    **COMPLAINT**

them in the OFAP.

84.     The OFAP events that occurred, and documents BAYVIEW produced, or failed

to produce, concurrent with them, show that BAYVIEW's statements in its January 30, 2015

letter were false, misleading, and omitted many material facts relating to the Plaintiffs Loan, the

noteholder, the endorsements on the Note, the Trust Deed's beneficiary, the assignments, and

BAYVIEW's authority to foreclose.

85.     Oregon requires that a beneficiary non-judicially foreclosing a Trust Deed under

the Oregon Trust Deed Act ("OTDA") must first participate in the OFAP with the borrower, or

get an exemption. Defendant BAYVIEW invited the Plaintiffs to participate in the OFAP on

March 17, 2015. Plaintiffs accepted. The OFAP case number assigned was BI-150310-1023.

*See Exhibit I – Page 1.*

86.     An official record of the OFAP case is currently memorialized by Mediation Case

Manager ("MCM"), the administrator of the program for the Oregon Department of Justice. The

OFAP case record can be accesses through an internet website. Plaintiffs will make their

username and password available to the Court under seal when requested.

87.     Plaintiffs' OFAP case material, and discussions, are not governed under ORCP 36

relating to confidential settlement discussions. None of the Plaintiffs' OFAP case information is

confidential. As such, Plaintiffs incorporate all information relating to OFAP case BI-150310-

1023, by reference, as if it all were set forth herein. *Exhibit B - Trust Deed, Exhibit E - Note,*

*and Exhibit I - OFAP Excerpts*, are true and correct copies of a portion of the Plaintiffs' OFAP

case documents which were produced to the Plaintiffs by Defendant BAYVIEW while they

jointly participated in the program from March 17, 2015 through June 8, 2015.

PAGE 18     **COMPLAINT**                                    Gary C. Gosha
                                                            17590 SW Cheyenne Way
                                                            Tualatin, OR 97062
                                                            503-522-6571

88.     On March 17, 2015, Defendant BAYVIEW declared that BONYM was the "beneficiary" of the Plaintiffs' Trust Deed, and that BAYVIEW was acting as BONYM's agent. *See Exhibit I – OFAP Excerpts Page 2 and 3.*

89.     On March 17, 2015, the only publically recorded assignment of the Plaintiffs' Trust Deed to BONYM was the 2012 assignment from MERS to BONYM. *See Exhibit G – MERS Assignment.*     MERS cannot not be a beneficiary of a Trust Deed and cannot not, therefore, assign an interest that it did not possess to another party. The only "beneficiary" of the Plaintiffs' Trust Deed on March 17, 2015 was AWLNYC, the non-existent lender.

90.     BAYVIEW did not have the authority to request an OFAP meeting with the Plaintiffs. BAYVIEW's OFAP application on, or about March 17, 2015, was falsified based on a meaningless assignment of the Plaintiffs Trust Deed from MERS to BONYM in 2012.

91.     ORS 86.726 requires that a beneficiary foreclosing a trust deed must first get a Certificate of Compliance ("COC") from the OFAP or they are barred from non-judicially foreclosing under the OTDA.  The OFAP COC is *"step one"* when foreclosing a trust deed under the OTDA.

92.     ORS 86.729(4) states that the beneficiary (allegedly BAYVIEW on behalf of BONYM) must produce true and correct copies of the Plaintiffs' Trust Deed and Note, a complete payment history, a property valuation, an NPV financial analysis along with its inputs and outputs, and a Pooling and Servicing Agreement if applicable.

93.     Defendant BAYVIEW produced a Trust Deed naming non-existent AWLNYC as the lender *(Exhibit B)*, a Note with no endorsements *(Exhibit E),* a partial payment history missing nine years of data *(Exhibit I – OFAP Excerpts Page 4 to 6*, and a Broker Price Opinion

PAGE 19     **COMPLAINT**                               Gary C. Gosha
                                                        17590 SW Cheyenne Way
                                                        Tualatin, OR 97062
                                                        503-522-6571

("BPO") valuing the property at $445,000 *(Exhibit I – OFAP Excerpts Page 7)* which was $205,000 higher than the Plaintiffs professionally appraised value of $240,000 completed just weeks before the OFAP conference *(Exhibit I – OFAP Excerpts Page 8).*

94.     Because of the statements Defendant BAYVIEW made in their January 30, 2015 letter, and the numerous anomalies in the documents it produced, or failed to produce, in the OFAP, the Plaintiffs began to suspect fraud.

95.     A resolution conference was subsequently held between the Plaintiffs and Defendant BAYVIEW on June 2, 2015. Over the Plaintiffs objections, the OFAP administrator, MCM, issued a Certificate of Compliance ("COC") to Defendant BAYVIEW. *See Exhibit J - OFAP COC and Facilitator Report.*

96.     The OFAP COC contains false and misleading statements and omits material facts as to the BAYVIEW's authority to act in the manner they asserted in the OFAP.

## M.     BAYVIEW's Authority in the OFAP

97.     BAYVIEW falsified its OFAP application by naming BONYM as a beneficiary based on the meaningless 2012 MERS assignment of the Plaintiffs Trust Deed.

98.     The Plaintiffs also discovered that on May 1, 2015, a month before the OFAP had concluded in June, BAYVIEW publically recorded a new assignment of the Plaintiffs' Trust Deed purporting to assign its beneficial interest to Defendant BONYM. *See Exhibit K - 2015 CW Assignment.* The May 2015 assignment took place more than three months after BAYVIEW claimed to represent BONYM as a beneficiary in their January 30, 2015 letter, and more than 6 weeks after BAYVIEW claimed to represent BONYM in the OFAP. Defendant BAYVIEW concealed the May 1, 2015 assignment from the Plaintiffs, at all times, while they jointly

PAGE 20     **COMPLAINT**

participated in the OFAP.

## N. BAYVIEW Forged an Assignment of the Trust Deed

99.     The May 1, 2015 assignment of the Plaintiffs' Trust Deed is a forgery. It names

an "assignor" that did not have beneficial right to "assign" to the "assignee" (BONYM) on that

date. Defendant BAYVIEW, acting as the "attorney-in-fact" for Countrywide Home Loans, Inc.

dba America's Wholesale Lender ("CWdbaAWL") named it as the party transferring its

beneficial rights to BONYM. CWdbaAWL's beneficial interest in the Plaintiffs' Trust Deed, if

it ever held any, were sold as "an absolute sale" to another party pursuant to PSA Section 10.04

(PSA Page 96), when the Loan was securitized in 2005. CWdbaAWL was also not registered to

do business in Oregon on the date of the assignment. The May 1, 2015 assignment contains false

and misleading statements and omits material facts regarding the name and nature of the

"assignor", its interests in the Trust Deed, and the "assignee".

## O. BONYM'S Standing to Foreclose

100.     On May 4, 2015, while the parties were in the OFAP, the Plaintiffs sent an email

to BONYM inquiring as to BONYM's interest in the Plaintiffs' Loan. *See Exhibit L - BONYM*

*Inquiry.* BONYM's response is as follows: *"BNY Mellon in not an investor but a Trustee and*

*therefore does not physically own the loan or property".*

101.     Defendant BONYM's statement in *Exhibit L* that it was "not an investor", and

"that it did not physically own the loan", contradicts Defendant BAYVIEW's claim that

BONYM "is an investor" (*Exhibit I – OFAP Excerpts Page 9)*, that BONY is the beneficiary of

the Plaintiffs' Trust Deed with the authority to foreclose it (*Exhibit I – OFAP Excerpts Page 2)*.

BONYM does not have standing to foreclose the Plaintiffs Trust Deed.

PAGE 21     **COMPLAINT**

**P.  Forged Appointment of Successor Trustee**

102.    On September 11, 2015, Defendant BAYVIEW filed an "Appointment of

Successor Trustee" in the records of Washington County Oregon as document number 2015-

077505. *See Exhibit M – Appointment Successor Trustee.* This document is a forgery.  It

contains false and misleading statements and omits material facts as to the nature and name of

the beneficiary and its authority to substitute the trustee.  In this document, BAYVIEW, acting as

an agent for BONYM (CWALT 2005-72), purports to appoint Defendant CRC as a successor

trustee of the Plaintiffs' Trust Deed.   BONYM (CWALT 2005-72) was not the beneficiary of

the Plaintiffs' Trust Deed on September 11, 2015 because the May 1, 2015 assignment of the

Trust Deed to BONYM (Exhibit K) was a forgery and therefore meaningless, and too, the MERS

assignment in 2012 (Exhibit G) was also meaningless.  BAYVIEW, as BONYM's, agent did not

have the authority to substitute the Trust Deed's trustee as it has claimed.

**Q.  Forged Notice of Default and Election to Sell**

103.    On September 11, 2015, Defendant CRC filed a Notice of Default and Election to

Sell in Washington County Oregon as document number 2015-077506. *See Exhibit A – NOS.*

The NOS is a forgery as it contains false and misleading statements and omits material facts as to

the name and authority of the "foreclosing trustee", the name and authority of the "beneficiary",

and the amount of the "default" claimed.

> a)  The NOS makes reference to a Trust Deed that names MERS as "beneficiary"
>     of the Trust Deed when MERS cannot be a beneficiary under the OTDA.
>
> b)  The NOS improperly identifies the legal name of the lender named in the
>     Trust Deed as "AMERICA'S WHOLESALE LENDER" when, in fact, the

PAGE 22    **COMPLAINT**

Trust Deed identifies the lender as "AMERICA'S WHOLESALE LENDER, a
NEW YORK CORPORATION.

    c) The NOS claims the current beneficiary of the Plaintiffs' Trust Deed is
BONYM when both publically recorded assignments of its beneficial interest
to BONYM are meaningless;

    d) The NOS claims a default in the amount of $124,752.53 when all payments to
the Trust are current with respect to the Loan they claim is the Plaintiffs.

104.    Plaintiffs disputed Defendant CRC's Notice of Sale in a letter to them on
September 16, 2015.

## R. BAYVIEW's Foreclosure is Fraudulent

105.    BAYVIEW's foreclosure is fraudulent, in part, for the following reasons:

    a) Defendant BAYVIEW produced a Trust Deed naming non-existent
AWLNYC as the lender *(Exhibit B),* and MERS as its beneficiary, as their
authority to foreclose;

    b) Public records show a meaningless assignment of the Trust Deed "only" from
MERS to BONY in 2012 as their authority to participate in the OFAP in
March 2015. *(Exhibit G)*;

    c) Public records also show that Defendant BAYVIEW created another meaning
less assignment of the Trust Deed "only" from CWdbaAWL to BONYM in
May 2015, as their authority to create the foreclosure documents, when
CWdbaAWL did not possess and interests to assign to BONYM *(Exhibit K)*;

    d) Defendant BAYVIEW produced a Note with no endorsements *(Exhibit E)* to

PAGE 23    **COMPLAINT**

any party, including BONYM;

e) Defendant BAYVIEW produced a partial payment history missing nine years of data so an accurate accounting of the Loan could not be established in the OFAP. *(Exhibit I – OFAP Excerpts Page 4 to 6*;

f) Defendant BAYVIEW produced a Broker Price Opinion ("BPO") valuing the property at $445,000 *(Exhibit I – OFAP Excerpts Page 7)* which is $205,000 higher than the Plaintiffs professionally appraised value of $240,000 completed just weeks before the OFAP conference. *(Exhibit I – OFAP Excerpts Page 8)*;

g) Public records show that Defendant BAYVIEW appointed CRC as a the Trust Deed's successor trustee for Defendant BONYM based on the May 2015 meaningless assignment of the Trust Deed to BONYM *(Exhibit M);*

h) Defendant CRC then filed the foreclosure *(Exhibit A)* claiming BONYM is the beneficiary, who in turn, claims a default on behalf of the Trust which is currently reporting no losses, and that all payments have been received on time each month.

106.    The above anomalies in the Defendants documents prevent them from foreclosing under the OTDA as they cannot properly identify a beneficiary nor a default.

**S. Plaintiffs Rescind Their Loan under Truth in Lending Act ("TILA")**

107.    TILA seeks to assure meaningful disclosure of credit terms and conditions so consumers, like the Plaintiffs, will be informed before they sign any loan documents. 15 U.S.C. § 1601(a).

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

108.    TILA requires specific disclosures *"before the closing"* of a credit transaction and these disclosures must be *"clear and conspicuous"*. 15 U.S.C. § 1632(a).

109.    The Defendants, or some of them, engaged in fraudulent, misleading, and deceptive practices to conceal material facts relating to the Plaintiffs real estate loan in 2005, or failed to make these facts *"clear and conspicuous"* before closing. On information and belief, the Defendants, or some of them:

> a) Failed to disclose that the creditor (lender) named on the Plaintiffs Trust Deed did not exist; 15 U.S.C. § 1602(f) Reg. Z. § 226.2(a)(17);
>
> b) Failed to disclose that the creditor (lender) named on the Plaintiffs Note did not exist; 15 U.S.C. § 1602(f) Reg. Z. § 226.2(a)(17);
>
> c) Failed to make *"clear and conspicuous"* that the Note provided for an undisclosed "co-obligor", in paragraph nine of the document, and by not disclosing this fact on the TILA disclosure form; 15 U.S.C. § 1602(f) Reg. Z. § 226.2(a)(17);
>
> d) Failed to disclose that the broker origination fee was $10,400 dollars and not $2,400 as stated in TILA disclosure; 15 U.S.C. § 1605(e); Reg. Z. § 226.4(c)(7);

110.    The Defendants, or some of them, knew these material facts in advance of the loan's closing in 2005, failed to disclose them at that time, and have, at all times, concealed them from the Plaintiffs.

111.    The above TILA violations were revealed to the Plaintiffs during their investigations into Defendant BAYVIEW's foreclosure proceeding against them in September

PAGE 25   **COMPLAINT**

2015, and the months that followed.

112.     The Defendants, or some of them, also failed to disclose, before closing, that the PSA controlling the Trust, to whom the Plaintiffs loan would be sold, would prevent the assumption of the Plaintiffs loan, while the TILA disclosure form's "loan assumption checkbox" was marked "YES". The PSA also placed refinancing and modification restrictions on the Plaintiffs Loan. PSA Page 56. These restrictions were not disclosed to the Plaintiffs and were added to the Plaintiffs original Loan terms without their approval.    The Defendants, or some of them, knew the above facts to be true in advance of the loan's closing in 2005 and have, at all times, conceal them from the Plaintiffs.

113.     Plaintiffs are within their rights under 15 U.S.C. § 1601 et seq. to rescind their loan because it was never consummated under Oregon law and they have never been contractually obligated under it.

114.     Plaintiffs notified Defendant BAYVIEW of their intent to rescind their loan on November 10, 2015. *See Exhibit N - Notice of Rescission.*

115.     Defendant BAYVIEW did not comply and unwind the Loan transaction within 20 days as required under TILA.

116.     Plaintiffs sent Defendant BAYVIEW a demand letter on December 3, 2015. *See Exhibit O – Demand Letter.*

117.     Plaintiffs received a "rescission" reply from BAYVIEW on January 13, 2016 in a letter dated January 6, 2015. *See Exhibit P - Bayview Rescission Reply.*  BAYVIEW's letter of January 6, 2016 is 34 days past the 20 day deadline to respond to Plaintiffs Notice of Rescission as prescribed under 15 U.S.C. § 1635(b).

PAGE 26     **COMPLAINT**

118.     BAYVIEW's January 6, 2015 letter stated that it would not comply because the

rescission notice was *"not within three years of origination"*. BAYVIEW's statement to that

effect is false, misleading, and does not accurately reflect the Plaintiffs rescission rights under

TILA.

119.     TILA's unconditional three day right to rescind, and its three year right of repose,

do not begin until the credit transaction is "consummated". 15 U.S.C. § 1635 et seq. In this

case, the Plaintiffs credit transaction was never consummated because the Trust Deed is void and

not enforceable under Oregon law and the law of the Ninth Circuit.

120.     Plaintiffs are within their rights to rescind their Loan under TILA if the credit

transaction that created is was never consummated and they are not contractually bound to it.

## T. Defamation, Humiliation and Harasssment

121.     With days of the Defendant CRC's public filing of the non-judicial foreclosure,

Plaintiffs property was listed on Zillow, RealtyTrac, and other foreclosure listing websites, as

either in "pre-foreclosure" or "foreclosure", and some listed "auction dates".

122.     Within days of the Defendant CRC's public filing of the non-judicial foreclosure,

the Plaintiffs began to receive mail solicitations from people offering foreclosure help, wanting

to buy their home, and on one occasion, a personal visit from a person knocking on their door

wanting to look at the property.

123.     Plaintiffs have been defamed, publically humiliated, and personally harassed, as a

result of the Defendant CRC's advertisement of their property as being in "foreclosure", or "pre-

foreclosure", with an auction date.

124.     As of the date of this Complaint, the Defendants alleged the Plaintiffs default,

PAGE 27     **COMPLAINT**

including accumulated fees and costs, was approximately $135,000. When the Plaintiffs first ask BANA for help, there was no default.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Injunctive Relief - Against All Defendants

125. Plaintiffs re-allege each allegation as set forth above and incorporate each by reference as if each were set forth herein.

126. The Defendants are employing unlawful, deceptive, and unconscionable trade practices, and tactics, in the prosecution of their non-judicial foreclosure of the Plaintiffs home as more specifically set forth in this Complaint. Pursuant to ORS 646.632, the Court may restrain the Defendants from continuing these tactics including the non-judicial foreclosure which is a product of the tactics. Plaintiffs ask the Court to protect their countervailing interests in avoiding wrongful foreclosure and enjoin the Defendants from selling their home until the Plaintiffs claims against them are being adjudicated.

127. The Defendants are pursuing a pattern of racketeering through the forgery, false filings, and falsification of their business records, as more specifically set forth in their SIXTH CAUSE OF ACTION in this Complaint. Pursuant to ORS 166.725, the Court may restrain the Defendants from continuing to engage in this activity and halt the non-judicial foreclosure sale of the Plaintiffs' home which is a product of their racketeering activity. Here, again, the Plaintiffs have countervailing interests in avoiding wrongful foreclosure, especially considering that the Defendants have employed forgery and false filings, and falsified their business records, in order to foreclose and sell the Plaintiffs' home. Plaintiffs ask the Court to and enjoin the Defendants,

PAGE 28 **COMPLAINT**

pursuant to ORS 166.725, from selling their home until the Plaintiffs claims against them can be adjudicated.

128. Plaintiffs request that any bond requirements related to injunctive relief be waived since the Defendants will suffer no harm if injunctive relief is imposed. The Defendants have unlimited resources with which to litigate foreclosures and are indemnified for all losses related to this matter under settlements they have reached between themselves and with the Federal Government. The Plaintiffs litigation resources are limited and when they first asked the Defendants for help, more than four years ago, they were current on their Loan. The Defendants could have provided help but refused to do so. Plaintiffs ask the Court to waive any injunctive relief bond requirement as equitable relief for the Plaintiffs in this matter.

## SECOND CAUSE OF ACTION
### Declaratory Relief - Against All Defendants

129. Plaintiffs re-allege each allegation as set forth above and incorporate each by reference as if each were set forth herein.

130. Pursuant to 28 U.S.C. § 2202, the Plaintiffs have substantial legal rights in the real property that is at issue in this litigation. The Defendants have threatened those rights as set forth in herein.

131. Plaintiffs seek a judicial determination and order declaring that (a) the "Lender" named in the Plaintiffs' Trust Deed as *"AMERICA'S WHOLESALE LENDER. Lender is a CORPORATION organized and existing under the laws of NEW YORK"* ("AWLNYC"), did not exist as a legal entity on October 21, 2005, that (b) their Trust Deed is void, and that (c) all transactions related to their Trust Deed, including assignments of it, and this foreclosure, are also

PAGE 29 **COMPLAINT**

void and have no legal effect.  Complaint ¶ 33 to 38.

> a) Oregon law is clear that persons claiming an interest in a mortgage instrument must "exist", or it is "void".
>
> b) Plaintiffs' Trust deed names MERS as its beneficiary but MERS cannot be a beneficiary under the OTDA;
>
> c) ORS 86.705(2) states: "Beneficiary" means a person named or otherwise designated in a trust deed as the "person" for whose benefit a trust deed is given……"
>
> d) ORS 86.205(6) states: "Person" means an individual, a corporation, an association or a partnership and includes, but is not limited to, a financial institution as defined in ORS 706.008, an investment company, an insurance company, a pension fund, or a mortgage company.
>
> e) AWLNYC does not meet the statutory definition of a "person" as defined in under ORS 86.205(6) because it does not exist.
>
> f) AWLNYC does not meet the statutory definition of a "beneficiary" as defined in ORS 86.705(2) because it not a "person".

132.    Plaintiffs seek a judicial determination and order declaring (a) that a broken chain of title exists with respect to the beneficiaries of the Plaintiffs' Trust Deed, (b) that a proper beneficiary under the OTDA cannot be established because of it, and (c) that the non-judicial foreclosure the Defendants are pursing under ORS 86.705 to ORS 86.795 must be vacated as it is improper under the Act.

> a) The Plaintiffs' Trust Deed chain of title is broken and cannot be repaired.

PAGE 30    **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

When the document was created in 2005, its *"non-existent"* lender,

AWLNYC, named an *"invalid beneficiary"* identified as MERS. *Exhibit G.*

In 2012, the *"invalid beneficiary"* MERS assigned its *"non-existent"*

beneficial interest to BONYM.    In 2015, Defendant BAYVIEW created

another assignment naming a new *"assignor"*. The new *"assignor"* then

assigned its *"non-existent"* beneficial interest in the Trust Deed to BONYM,

another meaningless act.

    b) The 2012 assignment failed because MERS cannot be a beneficiary under the

       OTDA and cannot transfer something that it does not possess to another party.

    c) The 2015 assignment fails because it is a forgery. *Exhibit K.* The Defendants

       substituted CWdbaAWL in place of "non-existent" AWLNYC in an attempt

       to perfect the assignment which is the basis of their foreclosure action. This

       was an act of forgery as CWdbaAWL did not possess any beneficial interest

       in the Plaintiffs' Trust Deed on the date the document was created.

    d) Foreclosure in the manner the Defendants have chosen is improper because

       the Defendants cannot legally establish who the beneficiary of the Plaintiffs'

       Trust Deed is other than non-existent lender AWLNYC.

133.    Plaintiffs seek a judicial determination and order declaring that (a) Plaintiffs'

"real estate loan" as defined in ORS 86.205(7) was never consummated, that (b) Plaintiffs have

never been contractually obligated under the "real estate loan", that (c) Plaintiffs' November 10,

2015 rescission *(Exhibit N)* of their Loan pursuant to 15 U.S.C. § 1635 is enforceable, and (d)

Defendant BAYVIEW failed to comply within Plaintiffs Notice of Rescission within 20 days

PAGE 31    **COMPLAINT**

*(Exhibit P)* as required under 15 U.S.C. § 1635(b).

   a) ORS 86.205(7) states that a "real estate loan" is the combination of a loan on
      real property along with a security agreement. The lender named in both the
      Trust Deed and Note did not exist and, therefore, neither document is
      enforceable under Oregon law.

   b) Consummation is further defined under 12 CFR Part 1026.2(13) as "*the time
      that a consumer becomes contractually obligated on a credit transaction*".
      Lender AWLNYC did not exist as a legal entity and did not, therefore, have
      the capacity to assent to the Trust Deed as a party with standing to enforce it.

   c) Under 15 U.S.C. § 1635 et seq., "rescission" is effective when the borrower
      gives notice to the creditor.

134.   Plaintiffs seek a judicial determination and order declaring that the Certificate of
Compliance *(Exhibit J)* issued to Defendant BAYVIEW by OFAP program administrator, MCM,
be nullified, and that the Defendants, all of them, be barred from foreclosing as they failed to
obtain a valid Certificate of Compliance for the following reasons:

   a) Defendant BAYVIEW did violate ORS 86.726(l)(a) when they falsely
      requested an OFAP resolution conference on behalf of BONYM (CWALT
      2005-72) when it was not the beneficiary of the Plaintiffs' Loan because the
      February 22, 2012 MERS assignment to BONYM was meaningless;

   b) Defendant BAYVIEW did violate ORS 86.726(2) by claiming a "void" Trust
      Deed along with meaningless assignment of it as their authority to request a
      resolution conference under ORS 86.726(2);

PAGE 32   **COMPLAINT**

c) Defendant BAYVIEW did violate ORS 86.729(4)(b)(A) by producing a "void" Trust Deed, a payment history of one year when nine years were required, a Broker Price Opinion that falsely inflated the value of the Plaintiffs' home by $205,000, by not producing a NPV report, by not producing a pooling and servicing agreement, and failing to produce a letter listing loan modification restrictions or prohibition that may have been imposed by the investor;

d) That Defendant BAYVIEW did violate ORS 86.732(1)(b)(A) by sending an agent that did not have complete authority to negotiate.

135.    For the above reasons, the OFAP Certificate of Compliance issued to BAYVIEW on June 4, 2014 must be invalidated and the OFAP record corrected to show that no COF was issued. Defendants must then be barred from foreclosing under the OTDA for lack of a valid COC.

136.    The Plaintiffs seek a judicial determination and order as to their rights, when represented, to attorney's fees and costs, as may be provided for under applicable law.

### THIRD CAUSE OF ACTION
### Violation of 15 U.S.C. § 1601 et seq.
### ("Consumer Credit Protection Act")

137.    Plaintiffs re-allege each allegation as set forth above and incorporate each by reference as if each were set forth herein.

### Violation of 15 U.S.C. § 1641 et seq.
### Count One Against Defendant BAYVIEW

138.    15 U.S.C. § 1641(g)(1) requires that "not later than 30 days after the date on

PAGE 33    **COMPLAINT**

which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."

139.    BAYVIEW, itself, or as a successor in interest to other parties, or as an agent for other parties, failed to comply with 15 U.S.C § 1641(g)(1), in that it failed to notify the Plaintiffs within 30 days of the transaction, that the beneficial interest in their Trust Deed had been sold, transferred, or assigned, to BONYM (CWALT 2005-72) on May 1, 2015 *(Exhibit K)*.

140.    Plaintiffs have been harmed by the Defendant BAYVIEW's failure to take action as required under 15 U.S.C § 1641(g)(1) and notify the Plaintiffs when their Loan was sold to other parties as required by the Act.

141.    As the direct and proximate result of Defendant BAYVIEW's refusal to take action as required under 15 U.S.C § 1641(g)(1) as more specifically set forth herein, Plaintiffs claim damages as authorized by 15 U.S.C. § 1640 et seq. which include actual damages in an amount of approximately $140,000 in payments made to a non-existent creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or another amount to be proven at trial, statutory damages, and, when represented, their attorney's fees and costs.

## Violation of 15 U.S.C. § 1635 et seq.
## Count One Against Defendant BAYVIEW

142.    Defendant BAYVIEW, itself, or as a successor in interest to other parties, failed to comply with 15 U.S.C § 1635(b) and take all necessary steps to release all liens claimed by it, or it as an agent of other parties, within 20 days of receiving Plaintiffs' rescission notice on November 12, 2015. *Exhibit N – Rescission Notice and Exhibit P – Rescission Reply.*

PAGE 34   **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

143.     Plaintiffs have been harmed by the Defendant BAYVIEW's refusal to take action as required under 15 U.S.C. § 1635(b) and unwind the Plaintiffs' Loan as required by the Act and refund their loan payments and release all liens on their property.

144.     As the direct and proximate result of Defendant BAYVIEW's refusal to take action as required under 15 U.S.C. § 1635 et seq., as more specifically set forth herein, Plaintiffs claim damages as authorized by 15 U.S.C. § 1640 et seq. which include actual damages in an amount of approximately $140,000 in payments made to a non-existent creditor and $100,000 in remodel costs, or another amount to be proven at trial, and statutory damages, and, when represented, their attorney's fees and costs.

## FOURTH CAUSE OF ACTION
### Violation of the Oregon Unfair Trade Practices Act (ORS Chapter 646)

145.     Plaintiffs re-allege each allegation as set forth above and incorporate each by reference as if each were set forth herein.

### Violation Oregon Unfair Trade Practices Act
### Count One Against Defendant BAYVIEW

146.     BAYVIEW acting within the course of their business, did within the State of Oregon sell, or offer to sell, services that are covered by ORS 646.607 and ORS 646.608, which are primarily used for personal, family or household purposes, and are the subject of enforcement under ORS 646.632.

147.     The Defendants, all of them, did willfully, or negligently, engage in the conduct, more specifically described in Complaint ¶ 79-124 above, in violation of ORS Chapter 646.

148.     The Plaintiffs did suffer an ascertainable loss as a result of BAYVIEW's unfair trade practices and tactics and claim as follows:

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

a) Defendant BAYVIEW did violate ORS 86.726(l)(a) when they falsely requested an OFAP resolution conference on behalf of BONYM (CWALT 2005-72) when it was not the beneficiary of the Plaintiffs' Loan because the February 22, 2012 MERS assignment to BONYM was meaningless *(Exhibit I)* ;

b) Defendant BAYVIEW did violate ORS 86.726(2) by claiming a "void" Trust Deed *(Exhibit B)* along with meaningless assignment *(Exhibit G)* of it as their authority to request a resolution conference under ORS 86.726(2);

c) Defendant BAYVIEW did violate ORS 86.729(4)(b)(A) by producing a "void" Trust Deed, a payment history of one year when nine years were required, a Broker Price Opinion that falsely inflated the value of the Plaintiffs' home by $205,000, by not producing a NPV report, by not producing a pooling and servicing agreement, and failing to produce a letter listing loan modification restrictions or prohibition that may have been imposed by the investor *(Exhibits B, E, I);*

d) That Defendant BAYVIEW did violate ORS 86.732(1)(b)(A) by sending an agent that did not have complete authority to negotiate. *(Exhibit I)*

e) That Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) - Falsifying Business Records, by falsifying and publically filing an "Assignment of Deed of Trust" dated May 1, 2015, that contained false and misleading statements and omitted material facts as to the authority

PAGE 36 **COMPLAINT**

of its "assignor" to assign its beneficial interest to BONYM as more specifically set forth in Complaint ¶ 99;

f)  That Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) - Falsifying Business Records, by falsifying and publically filing an "Appointment of Successor Trustee" on September 11, 2015 that contained false and misleading statements and omitted material facts as to the name of the beneficiary and its authority to act as more specifically set forth in Complaint ¶ 102;

g)  That Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) – Falsifying Business Records, by falsifying and publically filing a "Notice of Default and Election to Sell" on September 11, 2015 that contained false and misleading statements and omitted material facts as to the name of the beneficiary and the amount of the default as more specifically set forth in Complaint ¶ 103 to 104;

h)  That BAYVIEW purposely kept the Plaintiffs in default while they collected late fees of nearly $2,192.51 as set forth in Exhibit A-NOS and Complaint ¶ 56 to 71;

i)   That BAYVIEW purposely kept the Plaintiffs in default while they collected property inspection fees *(Exhibit I Page 5)* when the property was never inspected on a monthly basis as they have claimed in their payment history;

PAGE 37    **COMPLAINT**                                    Gary C. Gosha
                                                           17590 SW Cheyenne Way
                                                           Tualatin, OR 97062
                                                           503-522-6571

j) That Defendant BAYVIEW knew the Loan documents had fatal flaws in advance of their foreclosure proceedings and papered over these flaws with forged documents and falsified business records to cover them up;

k) That Defendant BAYVIEW knew that the public filing of their foreclosure action would be picked up and rebroadcast over media outlets like Zillow, RealtyTrac, and others, and that the Plaintiffs would be publically defamed, humiliated, and harassed as a result.

l) That BAYVIEW knew that their foreclosure would damage the Plaintiffs credit rating that they had substantially rebuilt since their bankruptcy in 2011.

149. At all material times, the Defendants acted knowingly, willfully, maliciously, and recklessly in their dealings with the Plaintiffs.

150. At all material times, Defendant BAYVIEW acted with an outrageous indifference to the highly reasonable risk of harm their actions would cause the Plaintiffs.

151. At all material times, Defendant BAYVIEW acted with a conscious indifference to the health, safety, and welfare of the Plaintiffs.

152. The Plaintiffs are therefore entitled to the greater of their actual damages under ORS 646.638 in an amount of approximately $140,000 in payments made to a non-existent creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or another amount to be proven at trial, and statutory damages of $200, together with their attorney fees, when represented, and any equitable relief the Court considers proper pursuant to ORS Chapter 646.638 and any equitable relief the Court may provide.

153. The Plaintiffs are entitled to Injunctive Relief under ORS 646.632 and ask the

PAGE 38    **COMPLAINT**

Court to restrain the Defendants from foreclosing on their home until all the claims in this

Complaint, as well as any amendments to it, have been fully adjudicated by all Courts that hear

the Plaintiffs case.

154.    Plaintiffs seek emotional distress damages under ORS 646.632 in the amount of

$500,000 as a result of the public defamation, humiliation, and harassment they have

encountered in their dealing with the Defendants.

155.    Plaintiff seek punitive damages under ORS 646.638(1) in an amount to be

determined

156.    The Plaintiffs also claim their right, when represented, to prevailing party attorney

fees and costs pursuant to by this statute or ORS Chapter 646.638, or other remedy as may be

appropriate.

### FIFTH CAUSE OF ACTION
### Common Law Fraud

157.    Plaintiffs re-allege each allegation as set forth above and incorporate each by

reference as if each were set forth herein.

### Fraud Count One
### Against Defendant BAYVIEW

158.    BAYVIEW made the following material and false representations to the Plaintiff

from January 30, 2015 through the date of this Complaint:

> a) That in their January 30, 2015 letter *(Exhibit H)* to the Plaintiffs, they stated
>
> the "the lender intends to foreclose" but then failed to name the lender;
>
> b) That in their January 30, 2015 letter *(Exhibit H)* to the Plaintiffs, they stated
>
> the "Servicer on behalf of the Noteholder intends to initiate foreclosure" but

PAGE 39    **COMPLAINT**

then failed to name the Noteholder;

c) That in their January 30, 2015 letter to the Plaintiffs, they stated that the Plaintiffs' Note had been endorsed to the Noteholder, when it had not *(Exhibit H)*;

d) That in their January 30, 2015 letter to the Plaintiffs, they stated that "$102,428.61" was the amount needed to reinstate the Loan, when all payments to the Trust have been made on time and the Trust is reporting no losses or default *(Exhibit H)*;

e) That BONYM was the beneficiary of the Plaintiffs' Loan in their January 30, 2015 letter to the Plaintiffs, when it was not *(Exhibit H)*;

f) That BONYM was the beneficiary of the Plaintiffs' Loan when they requested the Plaintiffs participation in the Oregon Foreclosure Avoidance Program ("OFAP") in March 2015, when it was not *(Exhibit I)*;

g) That the Plaintiffs' Trust Deed BAYVIEW produced in the OFAP was valid, when it was void *(Exhibit B)*;

h) That the January 2015 Broker Price Opinion BAYVIEW produced in the OFAP was accurate, when it overinflated the actual real appraised value by $205,000 *(Exhibit I)*;

i) That the Payment History BAYVIEW produced in the OFAP was complete, when it was missing nine years of data *(Exhibit I – Page 10)*;

j) That the amount BAYVIEW claimed was needed to bring the Loan current was correct, when it was not *(Exhibit H)*;

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

k) That the "Assignment of Deed of Trust" BAYVIEW created and publically
filed on May 1, 2015, was a valid legal instrument, when it was not *(Exhibit
K)*;

l) That as an agent of BONYM, it lawfully substituted Clear Recon Corp as the
new Trustee of their Trust Deed on September 11, 2015, when BONYM did
not have such authority *(Exhibit M)*;

m) That it had the legal authority to instruct Clear Recon Corp to foreclose on the
Plaintiffs' home, when it did not *(Exhibit A)*.

159.    BAYVIEW knew these statements and documents were false, or misleading, and
that they were material in their dealings with the Plaintiffs, and were made with the intentions
that the Plaintiffs would act on them. The Plaintiffs were ignorant of the falsity of the
representations and had a right to rely on them.

160.    BAYVIEW's fraud began when they sent the January 30, 2015 letter and
subsequently invited the Plaintiffs to appear jointly with them in the OFAP in March 2015.

161.    The Plaintiffs did not know, and in the exercise of reasonable care, could not have
known, of the scope and nature of the fraud until March 2015, and the months that followed. In
part, this is due to the complex nature of the fraud. Additionally, many of the documents that are
a product of the fraud had yet to be made available including the May 2015 Assignment and the
September 2015 Notice of Substitution and the Notice of Default.

162.    As the direct and proximate result of Defendant BAYVIEW's fraud, Plaintiffs
have incurred actual damages in an amount of $140,000 in payments made to a non-existent
creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or

PAGE 41    **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

another amount to be proven at trial.

163.    The Plaintiffs also claim their right, when represented, to prevailing party attorney fees and costs pursuant to ORS Chapter 20 or other applicable statute.

## Fraud Count Two
## Against Defendant BONYM

164.    BONYM made the following material and false representations to the Plaintiff from January 2015 through the date of this Complaint:

- a) That it has a beneficial interest in the Plaintiffs' Trust Deed, when it did not *(Exhibit G and K)*;
- b) That it had the authority to foreclose the Plaintiffs' Trust Deed, when it did not *(Exhibit G, K, and M)*;
- c) That it had the authority to appoint a successor trustee for the Plaintiffs' Trust Deed, when it did not *(Exhibit M)*;

165.    The Plaintiffs did not know, and in the exercise of reasonable care, could not have known, of the scope and nature of the fraud until March 2015 and the months that followed. In part, this is due to the complex nature of the fraud. Additionally, many of the documents that are a product of the fraud, had yet to be made available including the May 2015 Assignment and the September 2015 Notice of Substitution and the Notice of Default.

166.    As the direct and proximate result of Defendant BONYM's fraud, Plaintiffs have incurred actual damages in an amount of approximately $140,000 in payments made to a non-existent creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or another amount to be proven at trial.

PAGE 42    **COMPLAINT**

167.    The Plaintiffs also claim their right, when represented, to prevailing party attorney fees and costs pursuant to ORS Chapter 20 or other applicable statutes.

### Fraud Count Three
### Against Defendant BANA

168.    Defendant BANA has continuously made the following materially misleading and false representations to the Plaintiffs, omitted key material facts relating to their Loan, and concealed these facts from the Plaintiffs before, during, and after the Loans origination in 2005 through the date of this Complaint and claim as follows:

    a)  That BANA knew in advance of the closing of the Plaintiffs' Loan, and failed to disclose, that the Loan had been created specifically to be securitized in the Trust and that the Trust, without the approval of the Plaintiffs, would restrict the Plaintiffs' refinancing, modification, assumption, and loss mitigation options that would otherwise be available to them under the terms of their original Loan documents (PSA Pages 44-61);

    b)  That BANA claimed that AWLNYC was a legal entity and had the capacity to enter into a the Trust Deed and Note contracts with Plaintiffs in 2005, when it did not *(Exhibit C)*;

    c)  That BANA claimed that AWLNYC had a license to originate mortgage loans in Oregon in 2005, when it did not *(Exhibit D)*;

    d)  That BANA claimed that AWLNYC would be the party entitled to receive the Plaintiffs' payments, when it was not *(Exhibit B and C)*;

    e)  That BANA claimed that AWLNYC had a legal beneficial interest in the

PAGE 43    **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

Trust Deed, when it did not *(Exhibit C)*;

f)   That BANA, as the Loan's servicer, could not modify the Loan when the
payments were current, when it could have done so, Complaint ¶ 58;

g)   That BANA, as the Loan's servicer, could not talk to the Plaintiffs while they
were in bankruptcy, when it could have done so Complaint ¶ 58;

h)   That BANA failed, when asked, to disclose any loss mitigation prohibitions or
restrictions associated with the Plaintiffs Loan including those relating to
refinancing, modification, or assumption, Complaint ¶ 62 to 67, and 112.

169.   BANA, or BANA as successor in interest to other parties, knew these statements
were false or misleading, that they were material in their dealings with the Plaintiffs, and were
made with the intentions that the Plaintiffs would act on them. The Plaintiffs were ignorant of
the falsity of the representations and had a right to rely on them.

170.   As the direct and proximate result of Defendant BANA's Plaintiffs have incurred
actual damages in an amount of approximately $140,000 in payments made to a non-existent
creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or
another amount to be proven at trial.

171.   The Plaintiffs also claims their right, when represented, to prevailing party
attorney fees and costs pursuant to ORS Chapter 20 or other applicable statutes.

172.   The Plaintiffs did not know, and in the exercise of reasonable care, cold not have
known, of the fraud until March 2015, and the months that followed. In part, this is due to the
complex nature of the fraud and its well-crafted cover-up. And too, many of the documents that
were a produce of the fraud had yet to be made available to the Plaintiffs.

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

173.     As the direct and proximate result of Defendants' fraud, Plaintiffs have incurred

damages in an amount of approximately $140,000 in payments made to a non-existent creditor

and $100,000 in remodel costs to the property that will be lost through foreclosure, or another

amount to be proven at trial.

174.     The Plaintiffs also claim their right, when represented, to prevailing party attorney

fees and costs pursuant to ORS Chapter 20 or other applicable statutes.

## SIXTH CAUSE OF ACTION
## Violation ORS 166.715 to 166.735 ("Racketeering")

175.     Plaintiffs re-allege each allegation as set forth above and incorporate each by

reference as if each were set forth herein.

## Racketeering Count One
## Against BAYVIEW

176.     BAVIEW is an "enterprise" as defined by ORS 166.715(2) because it is a

business entity as described therein.

177.     BAVIEW has committed "racketeering activity" as defined by ORS

166.715(6)(P,Q) because it conspired with others to forge documents and falsify business records

as described in Complaint ¶ 79 to 104 to further their business of unlawfully foreclosing the

Plaintiffs Trust Deed in violation of ORS 86.705 to 86.795.

178.     BAVIEW has committed a "pattern of racketeering" as defined in ORS

166.715(4) because it has committed multiple acts of First and Second Degree Forgery and

Falsification of Business records as described in Complaint ¶ 99 to 104.

179.     BAYVIEW acting by itself, or as an agent for BONYM and/or BANA, or all of

them acting together, did directly commit, or caused others to commit, multiple acts of forgery

PAGE 45     **COMPLAINT**

with intent to defraud, in violation of ORS 165.007(1)(a-b) – Forgery in the Second Degree and ORS 165.013(1)(C) – Forgery in the First Degree. Complaint ¶ 99-104. These acts of forgery were related to records and documents that BAYVIEW kept in the normal course of their business and as such, BAYVIEW violated ORS 165.080(1)(a-d) - Falsifying Business Records.

180.    BAYVIEW has violated ORS 166.715 to 735 as follows:

     a) Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) - Falsifying Business Records, by falsifying and publically filing an "Assignment of Deed of Trust" dated May 1, 2015, that contained false and misleading statements and omitted material facts as to the authority of the "assignor" to assign its beneficial interest to BONYM as more specifically set forth in Complaint ¶ 99;

     b) Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) - Falsifying Business Records, by falsifying and publically filing an "Appointment of Successor Trustee" on September 11, 2015 that contained false and misleading statements and omitted material facts as to the name of the beneficiary and its authority to act as more specifically set forth in Complaint ¶ 102;

     c) Defendant BAYVIEW violated ORS 165.007(1)(a-b) – Forgery in the Second Degree, ORS 165.013(1)(C) – Forgery in the First Degree, and ORS 165.080(1)(a-d) – Falsifying Business Records, by falsifying and publically

PAGE 46    **COMPLAINT**

filing a "Notice of Default and Election to Sell" on September 11, 2015 that

contained false and misleading statements and omitted material facts as to the

name of the beneficiary and the amount of the default as more specifically set

forth in Complaint ¶ 103 to 104;

181.    As the direct and proximate result of Defendant BAYVIEW's racketeering

activity, Plaintiffs have incurred actual damages in an amount of approximately $140,000 in

payments made to a non-existent creditor and $100,000 in remodel costs to the property that will

be lost through foreclosure, or another amount to be proven at trial.

182.    Plaintiffs claim damages as provided for in ORS 166.725(7)(a) as a three times

multiplier of their actual damages.

183.    Plaintiffs claim injunctive relief under ORS 166.725(1) until all matters in this

Complaint are adjudicated.

184.    The Plaintiffs also claims their right, when represented, to attorney fees and costs

pursuant to ORS 166.725(14), or other financial recovery remedies that may be available under

ORS 166.725, or as the Court or a Jury may find equitable.

## SEVENTH CAUSE OF ACTION
### Promissory Estoppel
### Against Defendant BANA

185.    Plaintiffs re-allege each allegation as set forth above and incorporate each by

reference as if each were set forth herein.

### Promissory Estoppel Count One
### Against BANA

186.    BANA made false and misleading representations to the Plaintiff that help was

PAGE 47    **COMPLAINT**

available if their Loan was in default, but not if it was current. Complaint ¶ 56-71.

187.    BANA made these false and misleading representations in an effort to get the Plaintiffs to default on their Loan, and keep them in default, so they could accrue and collect additional fees associated with defaulted loans and their liquidation.

188.    Plaintiffs reasonably relied on BANA's representations that help was available if their Loan was in default.

189.    As such, Plaintiffs stopped making their Loan payments so they could get help.

190.    BANA should be estopped from foreclosing on the Plaintiffs property as it was BANA's false and misleading statements that caused the Plaintiffs default when, in fact, BANA had loss mitigation programs available while the Plaintiffs were current on their Loan but in imminent danger of default.

191.    As the direct and proximate result of Defendants' promises, Plaintiffs have incurred actual damages in an amount of approximately $140,000 in payments made to a non-existent creditor and $100,000 in remodel costs to the property that will be lost through foreclosure, or another amount to be proven at trial.

192.    The Plaintiffs also claims their right, when represented, to prevailing party attorney fees and costs pursuant to ORS Chapter 20 or other applicable statute.

/ / /

/ / /

/ / /

/ / /

PAGE 48    **COMPLAINT**

## VII.    PRAYER

**WHEREFORE**, the Plaintiffs pray for judgment and relief on their claims as follows:

193.    That the Defendants, all of them, take nothing from the Plaintiffs lawsuit;

194.    On their **FIRST CAUSE OF ACTION** (Injunctive Relief) as to All defendants,

    a) That the non-judicial foreclosure now pending and defined in *Exhibit A* be immediately halted until all claims in this action have been fully adjudicated by all Courts that may hear the Plaintiffs' case;

    b) That the Court waive any bond payment requirement;

195.    On their **SECOND CAUSE OF ACTION** (Declaratory Relief) as to All

Defendants:

    a) That the Plaintiffs' Trust Deed be declared void and that all transactions related to it are void and have no legal effect including the non-judicial foreclosure action pending against the Plaintiffs;

    b) That the Plaintiffs' "real estate loan" as defined in ORS 86.205(7) be declared that it was never consummated and that they have never been contractually obligated under it;

    c) That the Court issue an order requiring the Defendants to comply with 15 U.CS.C. § 1635(b) and refund the payments they extracted from the Plaintiffs as a product of a void Trust Deed and an unendorsed Note;

    d) That the Court issue an order vacating the non-judicial foreclosure;

    e) That the Court issue an order vacating all liens the Defendant claim relating to the Plaintiff's property.

PAGE 49    **COMPLAINT**

  f) That the OFAP Certificate of Compliance issued to the Defendants on June 4, 2015 be declared invalid;

  g) That because the OFAP Certificate of Compliance is invalid, the Defendants non-judicial foreclosure is also invalid and must be vacated.

196. On their **THIRD CAUSE OF ACTION** (Violation 15 U.S.C. § 1601 et seq.

("Consumer Credit Protection") Count One Against Defendant BAYVIEW,

  a) Court order enforcing statutory damages under 15 U.S.C. § 1640 et seq. for violations of 15 U.S.C. § 1641(g)(1).

  b) Court order enforcing remedies as prescribed under 15 U.S.C. § 1635 et seq. for violations of 15 U.S.C. § 1635 et seq.

  c) Court order enforcing damages under 15 U.S.C. § 1640 et seq. for violations of 15 U.S.C. § 1635 et seq.

  d) actual damages of approximately $240,000 plus interest at 9% per annum;

  e) when represented, their attorney fees and costs.

197. On their **FOURTH CAUSE OF ACTION** (Violation "OUFTPA") Count One

Against Defendant BAYVIEW,

  a) actual damages of approximately $240,000 plus interest at 9% per annum;

  b) emotional distress damages of $500,000;

  c) punitive damages as permitted under the statute;

  d) when represented, their attorney fees and costs;

  e) an order for injunctive relief barring the Defendants from foreclosing until all the Plaintiffs claims have been fully litigated.

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571

198.    On their **FIFTH CAUSE OF ACTION** (Common Law Fraud) Count One

Against Defendant BAYVIEW,

>    a) actual damages of approximately $240,000 plus interest at 9% per annum;
>
>    b) when represented, their attorney fees and costs incurred pursuant to the
>
>    prevailing party provisions of ORS Chapter 20 or other statutory provision
>
>    that may apply.

199.    On their **FIFTH CAUSE OF ACTION** (Common Law Fraud) Count Two

Against Defendant BONYM.

>    a) actual damages of approximately $240,000 plus interest at 9% per annum;
>
>    b) when represented, their attorney fees and costs incurred pursuant to the
>
>    prevailing party provisions of ORS Chapter 20 or other statutory provision
>
>    that may apply.

200.    On their **FIFTH CAUSE OF ACTION** (Common Law Fraud) Count Three

Against Defendant BANA.

>    c) actual damages of approximately $240,000 plus interest at 9% per annum;
>
>    d) when represented, their attorney fees and costs incurred pursuant to the
>
>    prevailing party provisions of ORS Chapter 20 or other statutory provision
>
>    that may apply.

201.    On their **SIXTH CAUSE OF ACTION** (Racketeering) Count One Against

Defendant BAYVIEW,

>    a) actual damages of approximately $240,000 plus interest at 9% per annum;
>
>    b) three times actual damages as provided for under ORS 166.725(7)(a);

PAGE 51    **COMPLAINT**

c)   injunctive relief as authorized under ORS 166.725(6)(b);

d)   a jury trial as authorized by ORS 166.725(7)(b);

e)   when represented, their attorney fees and costs.

202.    On their **SEVENTH CAUSE OF ACTION** (Estoppel) Count One Against

Defendant BANA,

a)   actual damages of approximately $240,000 plus interest at 9% per annum;

b)   when represented, their attorney fees and costs incurred pursuant to the

prevailing party provisions of ORS Chapter 20.

## VIII.    DEMAND FOR JURY TRIAL

203.    The Plaintiffs hereby demand a trial of their claims by jury to the extent

authorized by law.

Date: January 15, 2016

Gary C. Gosha
Kit M. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
gcgosha@gmail.com
503-522-6571
   *Plaintiffs, Pro Se*

PAGE 52    **COMPLAINT**

Gary C. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062
503-522-6571